UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSE CRISTOBAL BARRERA ZUNIGA,

                Petitioner,

      v.

MERRICK GARLAND[1], *Attorney General of the United States*, THOMAS FEELEY, *Field Office Director, Buffalo Field Office, U.S. Immigration & Customs Enforcement*, and JEFFREY SEARLS, *Facility Director, Buffalo Federal Detention Facility*,

                Respondents.
_____

**DECISION AND ORDER**

6:21-CV-06243 EAW

## INTRODUCTION

*Pro se* petitioner Jose Cristobal Barrera Zuniga ("Petitioner"), an immigration detainee currently detained at the Buffalo Federal Detention Facility ("BFDF"), seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Dkt. 1). Petitioner contends that his Fifth Amendment right to procedural and substantive due process and his Eight Amendment right not be subject to excessive bail have been violated. (*Id.* at 1). Petitioner asks the Court to order his immediate release with appropriate conditions of supervision or, in the alternative, to order Respondents to provide him with an individualized bond hearing before an immigration judge ("IJ") at which the government bears the burden of

---

[1]    Merrick Garland became Attorney General of the United States on March 11, 2021, and has been automatically substituted as a respondent pursuant to Federal Rule of Civil Procedure 25(d).

establishing by clear and convincing evidence that he presents a risk of flight or a danger to the community. (*Id*. at 2). Respondents oppose the petition. (Dkt. 5; Dkt. 6).

For the reasons set forth below, the Court grants the petition solely to the extent that the government is ordered to provide Petitioner with a bond hearing consistent with the procedural protections discussed herein. The petition is denied without prejudice in all other respects.

## BACKGROUND

Petitioner is a native and citizen of Guatemala. (Dkt. 5 at ¶ 5). He entered the United States without being admitted or inspected. (*Id*.).

On March 31, 2017, Petitioner pled guilty in New York State Supreme Court, Rockland County, to attempted robbery in the second degree. (*Id*. at ¶ 6). Petitioner was sentenced to five years of probation and 500 hours of community service. (*Id*.). However, after violating his probation, Petitioner was re-sentenced on August 9, 2018, to four years of incarceration and three years of post-release supervision. (*Id*. at ¶ 7).

On May 18, 2020, the Department of Homeland Security served Petitioner with a notice to appear for removal proceedings, charging him with being present in the United States without having been admitted or paroled, thus rendering him inadmissible under 8 U.S.C. § 1182(as)(6)(A)(1). (*Id*. at ¶ 9). That same day, Petitioner was released from the criminal custody of the New York Department of Corrections and Community Supervision into DHS's custody and provided with a notice of custody determination advising him that he would be detained during his removal proceedings. (*Id*. at ¶¶ 10-11). Petitioner requested review of the DHS custody determination before an IJ. (*Id*. at ¶ 11).

DHS placed Petitioner into removal proceedings on June 1, 2020.  (*Id*. at ¶ 12).  A custody redetermination hearing was scheduled for June 10, 2020.  (*Id*. at ¶ 13).  At that hearing, the IJ afforded Petitioner additional time to find an attorney but did not issue a decision on the matter of custody redetermination.  (*Id*. at ¶ 14).

On September 1, 2020, the IJ found Petitioner removable as charged and denied his applications for asylum, withholding of removal, and protection under the Convention Against Torture.  (*Id*. at ¶ 16).  The IJ accordingly ordered that Petitioner be removed from the United States to Guatemala.  (*Id*.).

Petitioner appealed the IJ's decision to the Board of Immigration Appeals (the "BIA").  (*Id*. at ¶ 17).  The BIA dismissed Petitioner's appeal on February 22, 2021.  (*Id*. at ¶ 18).

On March 18, 2021, DHS issued a Warrant of Removal/Deportation as to Petitioner.  (*Id*. at ¶ 21).  Petitioner filed a petition for review ("PFR") and a motion to stay in the Court of Appeals for the Second Circuit on March 19, 2021.  (*Id*. at ¶ 22).

The instant petition was filed on March 15, 2021.  (Dkt. 1).  Respondents filed their opposition on May 6, 2021.  (Dkt. 5).  On June 11, 2021, Respondents filed a supplement to their opposition, advising the Court that on May 26, 2021, DHS performed a custody review for Petitioner and determined that he posed a threat to the community and a risk of flight and thus was not eligible for release.  (Dkt. 6).  Petitioner filed his reply on June 30, 2021.  (Dkt. 8).

## DISCUSSION

**I.     Jurisdiction and Legal Standard**

The federal habeas corpus statute gives district courts jurisdiction to hear immigration-related detention cases. *See* 28 U.S.C. § 2241(c)(3); *Demore v. Kim*, 538 U.S. 510, 517-18 (2003) (holding federal courts have jurisdiction to review challenges to pre-removal detention); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention" in immigration cases). District courts do not have jurisdiction over challenges to the legality of final orders of deportation, exclusion, and removal; jurisdiction to review such challenges rests exclusively in circuit courts. *See Gittens v. Menifee*, 428 F.3d 382, 384 (2d Cir. 2005) ("[The REAL ID Act, 119 Stat. 231, § 106(a) (May 11, 2005)] eliminates habeas jurisdiction over final orders of deportation, exclusion, and removal, providing instead for petitions of review . . . which circuit courts alone can consider.").

"When a petitioner brings a habeas petition pursuant to § 2241, the petitioner 'bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'" *Dzhabrailov v. Decker*, No. 20-CV-3118 (PMH), 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)); *see Cruz v. Decker*, No. 18-CV-9948 (GBD) (OTW), 2019 WL 7572975, at *3 (S.D.N.Y. Aug. 27, 2019) ("To obtain [ ] relief [under § 2241], the petitioner must show violation of his rights by a preponderance of the evidence." (citing

*Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997))), *report and recommendation adopted*, 2019 WL 6318627 (S.D.N.Y. Nov. 26, 2019).

## II. Statutory Basis for Custody

Respondents argue that Petitioner is detained under 8 U.S.C. § 1231 (and not 8 U.S.C. 1226(c)) and that the petition was thus filed prematurely. (Dkt. 5-1 at 2, 11-19). "The distinction between § 1226 and § 1231 essentially comes down to whether an alien is subject to a final order of removal." *Enoh v. Sessions*, 236 F. Supp. 3d 787, 793 (W.D.N.Y. 2017). Section 1231 of the INA addresses detention of "immigrants in the 'removal period,' the term used in the statute to describe the 90-day period following an order of removal during which 'the Attorney General shall remove the alien.'" *Hechavarria v. Sessions*, 891 F.3d 49, 54 (2d Cir. 2018) (quoting 8 U.S.C. § 1231(a)(1)(A)). The removal period begins "on the latest of the following": (1) "[t]he date the order of removal becomes administratively final"; (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; and (3) "[i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B).

In 2012, DHS and the Second Circuit entered into a forbearance agreement wherein the government "has assured that removal will not occur" while the detainee has a PFR pending before that court. *In re Immigration Petitions for Review Pending in U.S. Court of Appeals for Second Circuit*, 702 F.3d 160, 162 (2d Cir. 2012).

Numerous judges in this Circuit, including the undersigned, have found that the forbearance agreement amounts to a court-ordered stay of removal and that detainees with

a pending PFR and motion to stay are thus not detained pursuant to § 1231. *See, e.g., Ranchinskiy v. Barr*, 422 F. Supp. 3d 789, 795-96 (W.D.N.Y. 2019) (the undersigned reaching such a holding); *Sankara v. Whitaker*, No. 18-CV-1066, 2019 WL 266462, at *4 (W.D.N.Y. Jan. 18, 2019) (collecting cases); *Yusuf v. Edwards*, No. 18-CV-3605 (GBD) (BCM), 2019 WL 4198798, at *5 & n.4 (S.D.N.Y. July 2, 2019) ("[B]ecause of the government's forbearance policy, an alien who files a PFR and a stay motion in the Second Circuit obtains 'the functional equivalent of a stay order,' such that § 1231 no longer governs his detention and he 'may not be denied a bond hearing on that basis.'" (collecting S.D.N.Y. cases)).

However, some judges in this Circuit have found to the contrary, concluding that "the forbearance is not a stay." *Brathwaite v. Barr*, 475 F. Supp. 3d 179, 186 (W.D.N.Y. 2020); *see also Narain v. Searls*, No. 19-CV-6361 (CJS), 2020 WL 95425, at *3-4 (W.D.N.Y. Jan. 8, 2020).

While the Court appreciates that the government must reassert this argument in order to preserve its position for appeal, nothing presented in this case persuades the Court that it should revisit its prior holdings regarding whether the forbearance agreement is the equivalent of a court-ordered stay for purposes of § 1231. The Court continues to find that individuals, like Petitioner, who have a pending PFR and who cannot be removed pursuant to the forbearance agreement, are detained under § 1226. The Court will accordingly assess the legality of Petitioner's detention under that statutory framework.

### III. Procedural Due Process Claim

Petitioner argues that his continued detention is a violation of his procedural due process rights. As set forth below, the Court agrees that Petitioner has not been afforded procedural due process, but rejects Petitioner's argument that the only appropriate relief is release on conditions set by this Court. Instead, the Court orders the government to provide Petitioner with a bond hearing at which: (1) the government must demonstrate dangerousness or flight risk by clear and convincing evidence; and (2) the IJ must consider non-bond alternatives to detention or, if setting a bond, ability to pay.

As the Second Circuit has held, unreasonably prolonged immigration detention without appropriate procedural protections may constitute a due process violation. *Velasco Lopez v. Decker*, 978 F.3d 842, 846 (2d Cir. 2020). For the reasons previously articulated in other decisions by this Court, *see, e.g.*, *Constant v. Barr*, 409 F. Supp. 3d 159, 167-68 (W.D.N.Y. 2019), this Court agrees with the overwhelming majority of courts in this Circuit that the multi-factor approach articulated by the court in *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *1 (S.D.N.Y. May 23, 2018), and other courts within this Circuit, is a useful tool for addressing procedural due process claims for aliens—like Petitioner—who are detained pursuant to 8 U.S.C. § 1226(c). Those non-exclusive factors are as follows:

> (1) the length of time the petitioner has been detained; (2) the party responsible for the delay; (3) whether the petitioner has asserted defenses to removal; (4) whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable; (5) whether the detention facility is meaningfully different from a penal institution for criminal detention; (6) the nature of the crimes committed by the petitioner; and (7) whether the petitioner's detention is near conclusion.

*Cabral v. Decker*, 331 F. Supp. 3d 255, 261.

As to the first factor, Petitioner has been in immigration detention since May 18, 2020, or for more than a year and a half. Thus, "[t]he first and 'most important' . . . factor weighs heavily in favor of granting the petition." *Bermudez Paiz v. Decker*, No. 18-CV-4759 (GHW) (BCM), 2018 WL 6928794, at *13 (S.D.N.Y. Dec. 27, 2018) (citation omitted). "[C]ourts in this Circuit have generally been skeptical of prolonged detention of removable immigrants, without process, lasting over six months," *Lett v. Decker*, 346 F. Supp. 3d 379, 387 (S.D.N.Y. 2018) (quoting *Lopez v. Sessions*, No. 18 Civ. 4189 (RWS), 2018 WL 2932726, at *14 (S.D.N.Y. June 12, 2018)), *appeal filed*, No. 18-3714 (2d Cir. Dec. 11, 2018), and "courts have found detention shorter than a year to be unreasonably prolonged as part of procedural due process analysis," *Rosado Valerio v. Barr*, No. 19-CV-519, 2019 WL 3017412, at *4 (W.D.N.Y. July 10, 2019) (collecting cases), *appeal dismissed*, No. 19-2848, 2020 WL 1126526 (2d Cir. Jan. 9, 2020).

Respondent contends that the second factor in the analysis—which party is responsible for the delay—undercuts a finding of an unreasonable length of detention in Petitioner's case because "Petitioner's continued detention is largely attributable to his own litigation strategy." (Dkt. 5-1 at 21). For procedural due process claims, when "considering whether [Petitioner] or the Government is responsible for the prolonged proceedings, the Court may examine the record to determine whether the alien sought repeated or unnecessary continuances, or filed frivolous claims and appeals." *Vallejo v. Decker*, No. 18-CV-5649, 2018 WL 3738947, at *4 (S.D.N.Y. Aug. 7, 2018) (quotation

omitted)); *see Sajous*, 2018 WL 2357266, at *11 ("[A]liens who are merely gaming the system to delay their removal should not be rewarded with a bond hearing that they would not otherwise get under the statute." (quoting *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 476 (3d Cir. 2015))). "[C]ourts should keep in mind that 'aliens should not be punished for pursuing avenues of relief and appeals[,]' but evidence of bad faith delays may cut against them." *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *7 (S.D.N.Y. July 25, 2018) (quotation omitted).

Here, the record does demonstrate that Petitioner requested several continuances during his removal proceedings. However, the record does not show that Petitioner was engaging in bad faith delay tactics. To the contrary, Petitioner's requests for continuances were made to allow him adequate time to obtain and meet with counsel and to prepare for the merits hearing. As such, it would not be appropriate to penalize Petitioner for requesting these adjournments. *See, e.g.*, *Vallejo*, 2018 WL 3738947, at *4; *Hernandez*, 2018 WL 3579108, at *7; *Sajous*, 2018 WL 2357266, at *11. Nor can the Court say on the current record that Petitioner's appeal to the BIA or his filing of a PFR was frivolous or in bad faith. *See Hechavarria*, 891 F.3d at 56 n.6 (noting the Supreme Court has given weight to a petitioner's decision to pursue review of a removal order in the "context only of an immigrant who has 'substantially prolonged his stay by abusing the processes provided to him,' *Nken v. Holder*, 556 U.S. 418, 436 (2009)—not of an immigrant who simply made use of the statutorily permitted appeals process"). This factor accordingly favors Petitioner.

As for the third factor, Petitioner has asserted defenses to removal in his immigration proceedings—namely, he seeks asylum and protection under the Convention Against Torture. Accordingly, this factor weighs in Petitioner's favor. *See Cabral*, 331 F. Supp. 3d at 261-62 (finding the third factor weighed in petitioner's favor because he asserted several defenses to his removal "including asylum . . . and relief under the Convention Against Torture"); *Perez v. Decker*, No. 18-CV-5279 (VEC), 2018 WL 3991497, at *5 (S.D.N.Y. Aug. 20, 2018) ("Petitioner has made a claim for asylum that could be a defense to his removal, again tilting the scales toward his unreviewed detention being unreasonable.").

The fourth factor is at best neutral. Petitioner was in criminal custody from August of 2018 to May of 2020, or for approximately 21 months. He has been detained by DHS from May of 2020 to December of 2021, or for approximately 19 months. These are roughly equivalent time periods, and it appears likely that absent intervention from this Court, Petitioner's immigration detention will exceed the time he was incarcerated.

The fifth factor—whether the detention facility is meaningfully different from a penal institution for criminal detention—is also at best neutral. As this Court has noted in past cases, while the BFDF provides detainees with amenities not normally available in a prison setting, it is ultimately a detention facility that severely curtails the liberties of the individuals detained therein. *See, e.g., Mycoo v. Warden of Batavia Fed. Det. Facility*, No. 6:20-CV-06405 EAW, 2020 WL 5800920, at *7 (W.D.N.Y. Sept. 29, 2020).

The sixth factor, the nature of the crime(s) Petitioner was convicted of, weighs in favor of Petitioner. Petitioner has only a single conviction for attempted robbery and was

sentenced initially only to probation and community service. *See id*. (finding that the sixth factor weighs in favor of the petitioner where the criminal convictions are relatively minor).

The final factor, whether Petitioner's detention is near conclusion, weighs in Petitioner's favor. Petitioner's PFR is still pending, and it is unclear when the Second Circuit will issue its decision. *See Ranchinskiy*, 422 F. Supp. 3d at 799.

Thus, on balance, the Court finds that Petitioner's continued detention without a procedurally proper bond hearing is constitutionally unjustified. *See Arce-Ipanaque v. Decker*, No. 19-CV-1076 (JMF), 2019 WL 2136727, at *2 (S.D.N.Y. May 15, 2019) ("At bottom, the minimal burden that a bond hearing would place on the Government is far outweighed by [the petitioner]'s interest in ensuring that his continued detention is justified." (quotation and original alteration omitted)).

The Court further finds, contrary to Respondents' argument and for reasons it has articulated at length in previous cases, that due process requires that Petitioner receive a bond hearing where the government must demonstrate dangerousness or flight risk by clear and convincing evidence, where the IJ considers whether less-restrictive alternatives to detention could mitigate that risk, and where the IJ considers ability to pay and alternative conditions of release in setting bond. *See Velasco Lopez*, 978 F.3d at 856-57; *Mycoo*, 2020 WL 5800920, at *7-8; *Abdi v. Nielsen*, 287 F. Supp. 3d 327, 335-39 (W.D.N.Y. 2018); *see also Hernandez v. Sessions*, 872 F.3d 976, 991 & n.4 (9th Cir. 2017) ("A bond determination that does not include consideration of financial circumstances and alternative release conditions is unlikely to result in a bond amount that is reasonably

related to the government's legitimate interests."); *Arce-Ipanaque*, 2019 WL 2136727, at *3 (collecting cases).

However, the Court rejects Petitioner's contention that this Court should consider in the first instance whether he should be released and on what conditions. "[D]istrict courts rightly favor conditional grants [of habeas corpus relief], which give the executive branch the opportunity to cure its constitutional errors and which appropriately recognize comity among the co-equal branches." *Hechavarria*, 358 F. Supp. 3d at 234–35 (W.D.N.Y. 2019) (quotations and original alterations omitted). The IJ is the appropriate individual to assess in the first instance, consistent with the procedures set forth above, whether release is warranted and what conditions are appropriate.

**IV.    Substantive Due Process and Excessive Bail Claims**

Petitioner also claims a violation of his Fifth Amendment right to substantive due process. (Dkt. 1 at 9). "In order to establish a violation of a right to substantive due process, a plaintiff must demonstrate not only government action but also that the government action was so 'egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). As this Court has explained in prior cases, an immigration detainee asserting a substantive due process violation must establish that his removal is not "reasonably foreseeable," and that standard is not satisfied where a petitioner "would be removed if he withdrew his petition for review." *Ranchinskiy*, 422 F. Supp.3d at 789; *see also Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991) (a petitioner "may not rely on the extra time resulting" from his appeal "to

claim that his prolonged detention violates substantive due process"); *Rodriguez v. Garland*, No. 21-CV-373-LJV, 2021 WL 5495397, at *4 (W.D.N.Y. Nov. 23, 2021) ("Although there comes a time when the length of a noncitizen's detention pending removal violates due process regardless of the procedural protections afforded, . . . that time has not yet come here."). Petitioner has not demonstrated a substantive due process violation in this case.

As to Petitioner's assertion that his "ongoing detention without a bond hearing" violates the Eighth Amendment's prohibition on excessive bail (Dkt. 1 at 9), "because this Court has determined that due process requires that Rodriguez receive an individualized [bond] hearing, his claim that the Excessive Bail Clause requires the same result is moot." *Rodriguez*, 2021 WL 5495397, at *9.

## CONCLUSION

For the foregoing reasons, the Court: (1) grants the petition (Dkt. 1) in part to the extent that the Court orders the government to afford Petitioner an individualized bond hearing consistent with the procedures outlined in this Decision and Order within 21 days of its entry; and (2) denies the petition without prejudice in all other respects, including Petitioner's request for immediate release.

If Petitioner requests a continuance that results in a bond hearing date outside the 21-day deadline set forth above, such a continuance will be in compliance with the instant Decision and Order, as long as the new date falls within a reasonable time period. Respondent is directed to file a status update with the Court within three (3) days of the

date of a decision concerning Petitioner's bond hearing regarding the outcome of the hearing. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: December 16, 2021
       Rochester, New York